All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God Save the United States and the Honorable Court. Thank you. Be seated. Good morning, everyone. First case this morning is number 2006-1628, Miken Composites v. Wilson Sporting. Mr. Levinson. Good morning, Your Honors. Michael Levinson for Wilson Sporting Goods Company. Your Honor, this is a case where the District Court improperly resolved fact questions in entering a summary judgment of non-infringement. In this case, there are very substantial contested issues of fact relating to whether or not the accused's devices manufactured by Miken actually contain inserts, and thus meet one of the limitations of the 390 patent. In this case, what happened is that the District Court seized upon a couple of sentences in this Court's earlier decision involving the same patent in the H&B case. And in that case, this Court did not enter a claim construction as such. What that Court did is provide some guidance on certain claims in the patent to the District Court. And Judge Rader, in that decision in the H&B case, made it absolutely clear that the record in H&B was simply not sufficient to have an accurate claim construction. He wrote that, in fact, I'm quoting from his opinion, that, furthermore, the sparse record lacks the complete context for accurate claim construction. And he remanded the case so that the District Court could do a complete analysis with the context of the accused's bats in the record, which they were not at the point in time in which the case was up here. There is, however, an earlier case involving the 390 patent, which also came from this Court, in which this Court did have a complete record, and in which there was a claim construction that was reviewed by this Court. That was the DiMarini v. Wood case involving the 390 patent. In that case, this Court accepted the definition of insert as anything put or fit into something else. That was the result of a review done by this Court based on a complete record. But that's not an issue, is it? What's an issue is the definition of insert, where Judge Doty erred in the District Court was by saying that an insert is something which has to be inserted or intended for insertion. And in this case, Mikekin makes its insert through a successive layering process. It layers some inserts, and then it separately cures and puts a release agent on the insert, and then it puts the frame around it. So you're not concentrating on the question of whether there's a gap or whether there's movement? Well, I'm going to get to the issue of gap and movement, because those are very much related to the notion of insert, and I think there are fact questions that relate to that as well. And on that very point, we have a classic example of fact questions with competing expert witnesses. Our Douglas Gunther conducted a variety of different tests and different measurements which showed the existence of a gap. Their expert, Dr. Dennedy, disputes that. He said, well, I detected some microscopic variations, although some are actually pretty big. But we have two experts coming to completely different conclusions, and what we have is the District Court crediting their expert and not ours, again, accepting resulting fact questions and summary judgment. Mr. Robinson, isn't it pretty hard to see, though, how the gap— just looking at literal infringement first, isn't it pretty hard? I'm having a difficult time seeing how the gap that is reflected in the patent or that's claimed in the patent appears—I guess we're talking about, well, the old bats are the ones where the gap issue is most prominent. I guess the insert issue is most prominent on the carbon bats. But, I mean, where's the gap? Where's there a fact issue on gap in the old bats? Well, with respect to the old bats, and those are a very limited number of bats in this case, but with respect to the old bats, the principal fact issue is created by the load deflection test. And Doug Gunther went through in his report and explained what he did. He, first of all, in his analysis, he actually found that there was a separation between what we consider to be the insert and the rest of the frame. He found that separation. He was able to bind that separation to the rest of the frame and then test it as a bound unit and as an unbound unit. And he determined that it needed a lot more load in order to get it to deflect. So he used that as a bound unit. The result, really, is exactly the leaf spring effect, which this court recognizes the essence of the patent in the Worth v. Meridi case. The Mike and Accused bats, the older bats, all of the bats, but including the older bats, they are constructed in a manner that enhances that leaf spring effect. And the load deflection test, more than anything else, as well as Mr. Gunther's ability to actually separately identify the insert of the frame raise fact questions, as does the fact that it's undisputed that with respect to at least a couple of those bats, they are manufactured in the same way as the newer carbon bats, which means that Mike in itself separately cures the insert. And I think, at a minimum, that five-year effect should have been given the opportunity to say— You're saying that even if one accepts the claim construction of the district court, that they're fact issues? Yes. That is correct. So you're saying you can still prevail, at least at this stage of the proceedings, because of fact issues, even if we were to agree with the district court's claim construction? That is correct. That is correct. But I do want to focus for just a moment on the insert, because I think the district court got it wrong in the insert. And I think this court got it right in the Worth opinion. I don't think it's proper to define insert as the district court did by reliance on some suggestion that this court made in the HMB case. And two points that I think really support that are, number one, the patent doesn't specify the manner in which the insert has to be made. This is not a product-by-process patent. This court recognized in both of its decisions dealing with this patent previously that this is a product patent. The insert is a structural member that comes forth clear in the patent. It comes forth clear in this court's opinion. Yet to suggest that the only way you can have an insert is if it is inserted into a prior existing frame is converting this product patent into a process patent. Well, the word insert does describe the structure, namely an element that is either inserted or adapted to be inserted or amenable to be inserted. The word itself does have some, not a process limitation, but it's characterized in its ability to be inserted into the other structure. Is that not right? Well, I would go back to what this court accepted in the Worth case, which is anything that is put or fit into something else so that the definition isn't describing how it's done or the manner in which the insert is actually put into something, but it's describing a structural member. I would also go back to the art, the baseball bat art. You hear a lot of discussion, I'm sure you're going to hear some this morning, about the merit patent. That's the patent that had those six hexagonal bracing inserts that they claim is such a problem for us. It's not a problem. I'll get to that in a moment. But in the merit patent in particular, they accept the fact and in fact insist that that's an insert. When you read the merit patent, the inventor of that patent described that the insert there is not inserted into the patent. It is made at the same time as the frame, or in fact it can be, just as their bats are made. And this is on page A456 of the record. It says, quote, in column two, line 62 it begins, The brace, referring to what they characterize as the insert, can be made of any suitable metal, such as the metal of the shell, referring to the frame, in which case it may be extruded or formed at the same time as the shell, or inserted through the end of the bat. So the art of baseball bats recognize that an insert is something that can be inserted, but it's also something that can be built around by the frame. And that's clear from the merit patent. So I think that clearly the Federal Circuit, when it issued the H&B decision, was not intending to develop a definition of insert that sort of locks us in for all time. And I think when you look at the context of that, when you look at the DiMarini versus Worth opinion, you look at the art of baseball bats, it's clear that someone ordinarily skilled in the art would understand that an insert is not limited to something that has to be inserted into some sort of pre-existing memory. So which is, if you would summarize, the primary issue that in your view is a disputed material fact? I would say the primary issue is the existence of an insert in the migrant bats. Not whether there's movement or gap or whatever, but just whether this part is properly called an insert? I believe that there is... I wouldn't put it quite that way. I believe that there are fact questions about movement because our experts show that there was movement. Their expert says that there wasn't, and movement is the essence of this invention. So there are disputed issues of fact as to movement. I do believe there are disputed issues of fact as to the existence of a gap as well. If there's no movement, can you prevail? I saw this discussion, one of you calls it grease, and another one calls it a resin, another one calls it epoxy in that space, and it's very hard to tell, and of course we're not making such findings here, just what the issue is in terms of movement, but it does seem that if there's no movement, does it matter whether you call it an insert or how you define an insert? If it is incapable of movement, we lose. And that's not the situation here. But is that in dispute? You'll have to ask counsel. I don't think that's in dispute, but I think that a gap for purposes of this patent is really, the Federal Circuit suggested it's a separation, sufficient to allow independent movement. If we have an insert that's a bracing insert, such as was at issue in Merritt, or was the subject of the Merritt patent, that would not fall within the scope of our claims. But the principal factual questions relate to whether or not there is an insert once we properly understand what the insert is, but there are also factual questions relating to the existence of a gap. And there's, in our view, no question that there is independent movement. Their bats operate like a leaf spring, which is the teaching of our patent. There's no question about that, and we believe that those facts we are entitled to bring to the trier of fact and let them decide whether or not they are sufficiently bonded together so that there really isn't movement, or whether our guy is right when he says, well, no, they're not. They're separated, and there's no dispute about that, and the movement is sufficient to allow for this leaf spring effect. Mr. Levinson, you argue in your briefs about the leaf spring effect and the load deflection and all of these other characteristics, but none of those things are in the claims. Well, they're not in the claims, but the specification, the key to understanding the claims and the claim term gap, and the claim term insert, for that matter, is the desire to achieve independent movement. I realize that. I realize that there may be all sorts of distinctions that can be made about leaf spring effect and load deflection and all of that, but it seems to me that the question that was presented to the district court and the question addressed in the district court's opinion related to the proper construction of the claim and whether under that construction any genuine issues of material fact remained unresolved, and I'm finding great difficulty trying to find the error in the district court's analysis. Well, I think you start with the definition of insert. Once you accept the fact that an insert doesn't have to be physically put into a preexistent frame, I think the question then becomes do the Mike and Bats have inserts? Do they meet that claim limitation? At a minimum, there's a fact question about that. Well, the premise to your conclusion is that the insert doesn't have to be physically inserted. Right. It seems to me the district court resolved that question in the context of a claim construction, not an issue of fact, and resolved it against you. And did so wrong, in our view. On the construction of the term insert, that is not one of the factual issues. That is something the district court resolved incorrectly, and I think there is no better evidence of that than the Merritt bet, where Merritt handed the bracing insert and suggested that could be integral to the frame. That alone shows that the district court got it wrong. And with that, Your Honors, I'd like to reserve the remainder of my time. Okay. Thank you, Mr. Levine. Thank you. Mr. Poon. May I please support Julian Poon, Gibson, Dunn, and Crutcher for the Appellee Mike Encompasses LLC? I think Judge Lynn identified the crusty issue when he said towards the end of my opponent's argument that neither a leaf spring effect nor a load deflection are claimed anywhere in the Eggerman patent. So all of the evidence, if you will, that they suggest there is some conflict on really speaks to something that's not claimed, and a person of ordinary skill in the art would not have had fair notice. I don't understand that. The claims are supposed to be very terse, short statements of, in this case, the structure. The mechanism, the way it works, why it works, that's what specifications are for. Otherwise, we could dispense with claims entirely, as is done in some countries. Say I claim what I've described in the specification that's new. So I guess it's always a toss-up, isn't it? You have to have enough in the claims to distinguish the prior art. Why do you have to say this is how it works in the claim? You don't have to, Your Honor, but there has to be something in the claim language to suggest that as appellant contends, the gap may only be large enough to allow for independent movement or for a leaf spring effect. And there's nothing in the specification or the claims that suggests that. More importantly, the prior art, which the inventor had to specifically distinguish and move away from in order to get the patent approved, had structures that were capable of independent movement and of a leaf spring effect. Which reference are you referring to? Such as the Fuji and Fuji II patents that we cited in our case. The one with the bracing hole in the middle? The bracing would be the merit patent, Your Honor. That's the hexagonal insert with the triangular frame. Which is the one that has the bracing pole, the stiffening pole running the full length of the bat? I believe, Your Honor, may be referring to the Fuji I patent, where there's tight abutment between the interior structure and the external frame. And that is exactly what our old bats... What do you mean by tight abutment? Do you mean at the ends? No, throughout the portion, of the impact portion of the bat, Your Honor, not just at the ends. And that is what the old bats, our HSE Viper Intensity and Velocity bats, are. They embody what was disclosed in the Fuji patent as tight abutment. I don't recall the argument that you were simply practicing the prior art. No, Your Honor, but it's clear that there is tight abutment here, just as there was in Fuji. What do you mean by abutment? The entire, throughout the entire bat? That they are touching, that there is contiguity throughout. And where is it touching? I'm sorry, in our products or in the patent? I'm trying to understand your argument, which you're making very forcefully, that the prior art shows that some sort of insert touches the interior of the bat throughout the bat? Yes, Your Honor, that would be in the Fuji I patent, where there is this tight abutment and there is no gap, just as there is here with our old bats. There is no separation between the interior structure and the external frame. As this Court held already in Hillerich and Bradsby, there has to be some kind of separation, and I think this Court, in De Marini v. Wirth, also recognized the need for the two structures to be separate. Is it fair to say that the difference is then, ultimately, not in addition to whatever issues there are concerning the definition of insert, whether there is a measurable gap or a perceivable gap or some sort of gap? Yes, Your Honor, there are two issues in this case. For the old bats, it's whether there is a gap, as Judge Schall observed earlier. And for the new bats, it is whether there is an insert or not. And I believe Judge Lynn has already aptly articulated why there cannot be said to be an insert in the new bats, or the carbon bats, as the District Court called them, which are just hollow bats with composite layers constituting it. There is nothing inside of it. There was an insert originally, but it was removed before the completion of the construction. I mean, there was a mandrel or an element that was removed at the end of the construction process. Certainly, Your Honor, but no one has ever contended that the mandrel is the insert here. It is merely a part of the manufacturing process. Mr. Poon, let me ask you, you heard Mr. Levinson when he was up before the panel, and he said that, look, even if one accepts the claim construction of the District Court, which he challenges, there nevertheless are genuine issues of material fact, so as to preclude the grant of summary judgment here. And I'm not so sure that I'm comfortable with his argument, at least in terms of literal infringement, but what is your response to his argument that there are fact issues vis-a-vis infringement under the doctrine of equivalence for both the carbon and the old bats? What I would say, Your Honor, is that there is no evidence that meets the Supreme Court's test or this Court's test earlier this year in Aquatex. The doctrine of equivalence has no application here because there has been no evidence tendered by Wilson on a limitation-by-limitation basis where their experts specifically show how a certain element, such as insert, for example, has been satisfied. Their lead piece of evidence, if you will, is this low-deflection test, which presupposes that what this patent claims is any kind of bat whose internal members are capable of independent movement or give rise to a least spring effect, which Peng, Fuji, and Merritt all give rise to a least spring effect. Moreover, it's the generalized comparison, as the district court observed, of just how, as a whole, the accused device and the patent are somehow the same when, in fact, they've never broken out element by element. And so I think that's why that evidence is insufficient as a matter of law to give rise to a tribal issue. Are you saying the function-way result test is not met? I understand. You're saying there's not the element-by-element analysis that's required for DOE or literal, but do you see any shortfall in the function-way result approach? No, I don't, Your Honor. Whether it's phrased as function-way result or insubstantial differences, as I think the Supreme Court observed in Werner Jenkins, the essential inquiry is whether each element is substantially the same in the accused device and in the patent that is claimed to have been infringed. And so whether we use one particular formulation of the test or not, it doesn't matter. There is no evidence here from which a reasonable jury could conclude that there is an insert in the new bat simply because when you drop some glue inside one of our bats, lo and behold, the bat becomes more stiff upon impact with the ball. And with respect to the old bats... Well, that's powerful evidence, isn't it? That there is something there that had more mobility before it was made solid in attachment and less afterwards? But it presupposes the existence of an insert, Your Honor, and there is... It presupposes the existence of a gap, but I wanted to ask you something that I thought wasn't treated in your responding brief, and that is, what's your response to all the pictures in the appellant's brief of the slices of the bat with the feeler gauge inserted in the gap? My response would be that no reasonable jury could conclude from that that there is a sufficient separation between the internal structure and the external structure, such as to satisfy either Claim 1's requirement of movement across the gap to operably engage the insert or Claim 18's requirement that the external frame or impact portion inwardly elastically deflect such to establish a tight interference fit that did not exist prior to impact. That, again, also implies some movement. So the mere fact that after the fact, you can force out the feeler gauge into a small portion of the circumference, and notably, not any larger portion of the circumference, shows only one thing, possibly, at most, which is that there are discontinuous and variably spaced separations of the sort that were expressly disclaimed by the inventor in the course of prosecuting his patent, specifically merit, where in response to the examiner's objection... But that's in dispute, isn't it, as to what it means if you can fit the feeler gauge into the space between the insert and whatever you call the outer part of the bat. As to the conclusions to be drawn from all that, doesn't that require testimony and evidence or demonstrations or whatever? Is this something that can be done on summary judgment? It can be where here the evidence of the separation is not sufficient to give rise to a trial issue of fact for a reasonable fact finder as to whether the internal and external members, if there even are such, and the most important thing to remember here, Your Honor, is that there aren't. There's only one unitary structure. This is a hollow bat with just composite layers to it. So the whole theory of the feeler gauge test presupposes an insert. Are there a lot of layers? How many layers? You said composite layers. I'm not aware of the exact number, Your Honor, but the manner in which it is manufactured. It is part of one integral in a cohesive whole. And so it is not, if you will, a separate and distinct structure as it is in the old bats that are even in merit. I thought the brief said that the inner portion, allow me to call it an insert, is molded first using a release agent or whatever, and then the outer composite is molded around it. Is that an oversimplification of what the brief said? I believe that's accurate with the stipulation that we would not agree that the inner member is an insert, but assuming, for purposes of argument, it could fairly be called an insert. We'll call it an inner member if we're arguing about what insert means. Then I believe that Your Honor's characterization is accurate. With respect to the insert and the district court's conclusion that there's no genuine issue of material fact as to the existence of an insert or the absence of the existence of an insert for the carbon bats. Yes, Your Honor. Play along with me for a little hypothetical for a minute. Let's suppose I'm an insert manufacturer and you're a bat manufacturer. You come to me and you say, I've got this great new hollow bat and I want you to make inserts for my hollow bat and I will place them inside the sleeve and seal them up. Fine. I manufacture and sell you these inserts. Then you find that you can take some of these inserts that you bought from me and you can make a carbon bat. Just take the insert and then build some carbon up around it and you find you have the same thing. Are the inserts I sold you any less an insert than the insert in your metal bat? I believe they are, Your Honor, because no person of ordinary skill in the art could have foreseen that something that is not actually inserted or intended for insertion could be an insert under your hypothetical. If they would look at it and they would see it as a hollow tubular bat, which is what it is and which it always was. And if there were some way in your hypothetical to encase something around the inner member, if you will, I don't think someone could fairly look at that at the time of the invention and say, aha, this is what's also being protected by the patent. I can't make, if you will, a hollow, I can't make, if you will, an internal structure and then encase or embalm it with some other outer structure. But either way, it's the same piece. I'm only selling you one thing. And it's the same piece. And it seems to me that's what Mr. Levinson's argument entails, in part anyway, the fact that, well, the word insert does have a characteristic that it's something either inserted or intended to be inserted, but it describes a piece of structure that can exist around which you can put something else. But as Your Honor observed earlier, the common and ordinary definition or meaning of insert informs what the structure is. It's not to convert this into a process patent, if you will, but it simply characterizes or tells you, or to a person, gives fair notice to someone at the time what this thing is. If it's no longer inserted or intended for insertion, how is anyone to know that this is also being protected by the fact the patent doesn't say inner member or inner layer of some structure around which it is built. If that is what the patent was meant to protect, that is what it should have said, and that's not what it said. It simply used the word insert, which this court in De Marini v. Wirth and in the Hillerich v. Brasby case, and even under the definition proposed by Wilson in its reply, something that is made to go into something else. It cannot be said to be true of the innermost layer of the hollow bat in our carbon bats. So you're saying that the meaning of the words cannot be ignored and the meaning has to be considered in the context of the claim. Absolutely, Your Honor. The meaning can't be tortured to encompass something that no one could have foreseen. Okay. Thank you, Mr. Pruitt. Thank you, Your Honor. Your Honors, on that last point, I think the hypothetical judgment that you put forward exactly captures the issue on the insert error that the district court made, and it's one thing for counsel to stand up here and say no one would have ever understood that an insert could be something that is built around as opposed to inserted. The problem with that, of course, is counsel says that. There is nothing in the record. To the contrary, I would go back to the merit patent. The merit patent explains. This was the art in existence as of 1986 when that patent issued. The insert can be something that is integral with the frame and built as part of the frame. Exactly what they're doing. If it's an insert from their perspective that makes our patent unenforceable against them, which it isn't, it is also an insert within the meaning that they're suggesting. Merit tells us that the art understands that insert is not limited to something that's physically inserted into something else. The patent tells us that as well in terms of the teachings and the specification, and the whole reason for having an insert is to allow independent movement. With respect, Judge Newman, to the issue of low deflection and independent movement, the key there, I think, and as I think your questions illustrate, is those items are evidence. They're evidence of the existence of the insert in the Mike and Bats. They're evidence of the existence of the gap in the Mike and Bats. The feeler gauge, the pictures, all of that is evidence. We're not suggesting you write that into the claim terms. We're suggesting that that's the evidence we have on our side, and the jury ought to be entitled to hear that evidence and decide whether there's literal infringement or infringement under the doctrine of equivalence. We have shown that the Mike and Bats have an insert. They at least operate in the same way as our patent, and infringement is an issue that should be presented to the jury in this case. Thank you very much. Thank you, Mr. Levinson. Mr. Poon, the case is taken under submission.